IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-00392-STV

HARVEY SENDER, not individually but solely as chapter 7 trustee for the estates of Craig Energy, LLC and Craig Energy Holdings, LLC,

    Plaintiff,

v.

CAPITAL ONE BUSINESS CREDIT CORPORATION,
MEDLEY OPPORTUNITY FUND II, LP,
CRAIG OBERMUELLER,
DIANA OBERMUELLER,
CRAIG'S NEWCO, INC.,
DAVIS, MALM & D'AGOSTINE P.C., and
J2 PARTNERS, INC.,

    Defendants.

_____

**ORDER**
_____

Magistrate Judge Scott T. Varholak

    This matter is before the Court on the Order to Show Cause issued by the Court on July 23, 2018, which ordered the parties to show cause why this case should not be transferred to the United States Bankruptcy Court for the District of Colorado (the "Bankruptcy Court").[1] [#67] The Court has carefully considered the parties' briefing in response to the Order to Show Cause [#70, 71, 74, 75], the case file, and the applicable case law, and has determined that oral argument would not materially assist in the disposition of the Order to Show Cause. For the following reasons, the Order to Show

---

[1] The parties have consented to this Court's jurisdiction and an Order of Reference was entered, referring the case to this Court for all purposes pursuant to 28 U.S.C. § 636(c). [#60, 61]

Cause is **MADE ABSOLUTE** and the Clerk of Court is directed to **TRANSFER** this case (and all pleadings and documents filed therein) to the United States Bankruptcy Court for the District of Colorado.

I.  **BACKGROUND**[2]

In 2013, Defendants Craig and Diana Obermueller (collectively, the "Obermuellers") sought to sell Craigs Roustabout Service, Inc. ("CRS"), an oil and gas production services company that was 100 percent owned by the Obermuellers at the time. [#1 at ¶¶ 6, 14-16] The Obermuellers, CRS, and Spindletop Holdings, LLC ("Spindletop")[3] entered into a Stock Purchase Agreement dated September 20, 2013 (the "Stock Purchase Agreement") to effectuate a leveraged buyout ("LBO") of CRS from the Obermuellers. [*Id.* at ¶ 18] Pursuant to the Stock Purchase Agreement, the Obermuellers contributed their CRS stock to a newly formed entity called Craig's NewCo, Inc. ("Newco") and caused CRS to be converted from a Utah S corporation to a Colorado limited liability company called Craig Energy, LLC ("Craig Energy"). [*Id.* at ¶¶ 19-20] Spindletop, which became Craig Energy Holdings, LLC ("Energy Holdings"), purchased a 100 percent interest in Craig Energy from Newco for $32.5 million in cash subject to post-closing adjustments, a $3.25 million promissory note payable to the Obermuellers, and an earn-out payable to the Obermuellers capped at $6 million. [*Id.* at ¶ 21]

To finance the purchase and obtain working capital, Craig Energy obtained separate loans from Defendant Capital One Business Credit Corporation ("Capital One")

---

[2] The Court draws facts from the allegations in Plaintiff's Complaint [#1] to provide background for the Order.
[3] Defendant J2 Partners, Inc. ("J2") formed Spindletop as the entity that would purchase the CRS stock from the Obermuellers. [#1 at ¶ 17]

and Defendant Medley Opportunity Fund II, LP ("Medley"). [*Id.* at ¶ 22] Capital One, as agent for certain lenders, entered into a Loan and Security Agreement dated November 26, 2013 with Craig Energy, as borrower, and Energy Holdings, as guarantor, pursuant to which Capital One, as agent, made loans to Craig Energy totaling $32 million (the "Capital One Agreement"). [*Id.* at ¶ 23] The Capital One loans were due and payable in full on November 26, 2018. [*Id.* at ¶ 28] In exchange for the Capital One loans, Craig Energy purportedly granted Capital One security interests in substantially all of Craig Energy's assets. [*Id.* at ¶ 26]

In addition, Medley, as agent for certain lenders, entered into a Loan and Security Agreement dated November 26, 2013 with Craig Energy, as borrower, and Energy Holdings, as guarantor, pursuant to which Medley, as agent, made a $14 million term loan to Craig Energy (the "Medley Agreement"). [*Id.* at ¶ 29] The Medley loan was due and payable in full on November 26, 2018. [*Id.* at ¶ 34] In exchange for the Medley loan, Craig Energy purportedly granted Medley security interests in substantially all of Craig Energy's assets. [*Id.* at ¶ 31]

Pursuant to a Management Agreement dated November 26, 2013, Energy Holdings, on behalf of itself and Craig Energy, agreed to pay J2 a monthly fee of $35,000 to provide advisory, consulting, and other services, and an additional fee for investment banking services. [*Id.* at ¶¶ 69-72]

On February 19, 2016, Craig Energy and Energy Holdings each filed voluntary petitions for Chapter 11 bankruptcy in the Bankruptcy Court.[4] [*Id.* at ¶ 74] On February

---

[4] Both bankruptcy cases remain pending before the Bankruptcy Court: *In re Craig Energy, LLC*, No. 16-11308-MER (the "Craig Energy Bankruptcy") and *In re Craig Energy Holdings, LLC*, No. 16-11318-MER (the "Energy Holdings Bankruptcy").

3

29, 2016, the Bankruptcy Court entered orders granting Craig Energy's and Energy Holdings' motions to convert their cases to cases under Chapter 7 of the Bankruptcy Code. [*Id.* ¶ 75; *see also* Craig Energy Bankruptcy, #19; Energy Holdings Bankruptcy, #17] On March 1, 2016, the Bankruptcy Court appointed Harvey Sender (the "Trustee") as the trustee in both the Craig Energy Bankruptcy and the Energy Holdings Bankruptcy. [Craig Energy Bankruptcy, #20; Energy Holdings Bankruptcy, #18] Capital One filed a proof of claim in the Craig Energy Bankruptcy for $10,391,043.24, and Medley filed a proof of claim in the Craig Energy Bankruptcy for $16,146,318.82. [#1 at ¶¶ 77, 78]

On February 16, 2018, the Trustee filed this lawsuit, not individually but solely as the Chapter 7 Trustee for the estates of Craig Energy and Energy Holdings. [#1] The Complaint asserts 19 causes of action and "demands a trial by jury in this case of all issues triable of right by jury" (the "Jury Demand"). [*Id.* at 42] The Trustee summarizes the claims filed in this lawsuit as follows:

- Against all Defendants: avoidance and recovery of alleged fraudulent transfers and obligations incurred pursuant to 11 U.S.C. §§ 544(b)(1), 550, and 551, Utah Code §§ 25-6-202(1)(b) and 25-6-203(1), and C.R.S.A. §§ 38-8-105 and 38-8-106;
- Against the Obermuellers: breach of fiduciary duty;
- Against Capital One and Medley: declaratory judgment regarding the validity, priority, and extent of their alleged liens in rolling stock;
- Against Capital One and Medley: unjust enrichment; and
- Against J2: avoidance and recovery of alleged preferential transfers pursuant to 11 U.S.C. §§ 547 and 550.

[#71 at ¶ 3] The Complaint acknowledges that this action "arises under, arises in, and relates to a case under title 11 of the United States Code." [#1 at ¶ 12] The Proposed Scheduling Order submitted by the parties—and ultimately entered by the Court—

4

similarly asserts that this action "arises under, arises in, and relates to cases filed under title 11 of the United States Code"—*i.e.*, the Craig Energy Bankruptcy and the Energy Holdings Bankruptcy. [#52 at 1; #59 at 1]

The Local Rules of this Court provide that "[a] case or proceeding brought under or related to Title 11 . . . shall be referred automatically to the bankruptcy judges of this district under 28 U.S.C. § 157."[5] D.C.COLO.LCivR 84.1(a). The Rules further require that "[a]ll pleadings and documents in [ ] cases [subject to automatic referral] shall be filed directly in the bankruptcy court, and the bankruptcy judges of this district shall exercise jurisdiction under 28 U.S.C. § 157(b)." *Id.* Accordingly, because it appeared that this action—which asserts claims under title 11 and which the parties agree "arises under, arises in, and relates to cases filed under title 11"—should have been filed directly in the Bankruptcy Court, the Court ordered the parties to show cause, if any there be, why this case (and all pleadings and documents filed therein) should not be transferred to the Bankruptcy Court pursuant to D.C.COLO.LCivR 84.1(f).[6] [#67]

On August 20, 2018, Defendants responded to the Order to Show Cause, stating that Defendants agreed that the case should be transferred to the Bankruptcy Court "to hear and determine all issues in this case." [#70 at 1-2] On that same date, the Trustee also filed his response to the Order to Show Cause. [#71] The Trustee acknowledged

---

[5] Pursuant to 28 U.S.C. § 157(a), "[e]ach district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district." Section 157(b)(1) provides, in relevant part, that "[b]ankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments." Section 157(b)(2)(h) defines "core proceedings" to include "proceedings to determine, avoid, or recover fraudulent conveyances."

[6] Pursuant to D.C.COLO.LCivR 84.1(f), "[a]ny bankruptcy pleadings and documents filed with the clerk of the district court shall be transferred to the bankruptcy court."

5

that the lawsuit arises, in part, under Title 11 and thus recognizes "the implications of the automatic referral of matters related to a bankruptcy case that is contained in Local Rule 84.1." [*Id.* at ¶ 5] The Trustee contends, however, that he believed 28 U.S.C. § 157(e), which provides that the bankruptcy judge may conduct a jury trial only with the express consent of all the parties, "compelled him to file the Complaint before this Court," because the Trustee contends that he is entitled to a trial by jury and does not consent to the Bankruptcy Court conducting a jury trial. [*Id.*] The Local Rules provide for no such exception and the Trustee provides no authority for filing his claims directly with the District Court rather than the Bankruptcy Court as required by the Local Rules. The proper procedure under the Local Rules would have been for the Trustee to file his lawsuit in the Bankruptcy Court and then file a motion for withdrawal of the automatic reference. *See* D.C.COLO.LCivR 84.1(a), (d).

The Trustee further argues that transferring this case to the Bankruptcy Court would unnecessarily delay the adjudication of the case, because the Trustee "would immediately file a motion to withdraw the reference back to District Court." [#71 at ¶ 15] The Court agrees with the Trustee that it would place form over substance—and waste the resources of the parties and the Court—to transfer this matter to the Bankruptcy Court only to have the Trustee immediately file a motion for withdrawal of the automatic reference, which would then be referred back to this Court for decision.[7] The Court thus construes the Trustee's Response to the Order to Show Cause as a motion to withdraw the automatic reference and considers that request in this Order.

---

[7] Pursuant to the Local Rules, any motion seeking withdrawal of the automatic reference is to be filed with the Clerk of the Bankruptcy Court, and then "[t]he bankruptcy judge shall refer the motion to the district court." D.C.COLO.LCivR 84.1(d).

6

The Court thus granted the parties' request to submit supplemental briefing on the issue of whether the Court should withdraw the reference to the Bankruptcy Court. [#72, 73] On September 10, 2018, Defendants filed their Reply in Opposition to Trustee's Show-Cause Order Response. [#74] Defendants argue that the Court should defer ruling on the Trustee's jury trial rights at this time and transfer the case to the Bankruptcy Court to conduct all pretrial matters, because Defendants' anticipated dispositive motions may negate the need to resolve the right to a jury trial for at least some of the claims. [*Id.* at 4-5] To the extent the Court considers the Trustee's right to a jury trial, Defendants argue (1) a trustee's presence "arises from and is entirely dependent on equity" and thus "a trustee (or debtor) lacks jury trial rights for claims that it prosecutes" [*id.* at 6] (2) the Trustee has no right to a jury trial on his claims against Capital One and Medley, because they filed proofs of claim in the bankruptcy cases [*id.* at 8-9]; (3) contractual jury-trial waivers are binding upon the Trustee [*id.* at 9-14]; and (4) the Trustee does not have a right to a jury trial on the state law claims, because they are equitable in nature [*id.* at 14-17].

On September 24, 2018, the Trustee filed his Reply in Support of His Response to July 23, 2018 Order to Show Cause. [#75] The Trustee argues that the Court should not defer deciding his entitlement to a jury trial, because it would be inefficient both because the issues are already briefed and the resolution of the right to a jury may impact discovery, litigation strategy, and the potential for settlement. [*Id.* at 2-3] The Trustee then refutes Defendants' arguments regarding the lack of a right to a jury trial and argues that he is entitled to a jury trial on all of his claims. [*Id.* at 3-12]

7

## II. ANALYSIS

### A. The Trustee's Right to a Trial By Jury

As a preliminary matter, the Court finds that the issue of the Trustee's right to a jury trial is not currently properly before the Court. It is undisputed that the operative complaint in this matter includes a Jury Demand. Defendants have not filed a motion to strike the Jury Demand and may not do so through their briefing on the Order to Show Cause. *See* D.C.COLO.LCivR 7.1(d) (requiring that "[a] motion shall not be included in a response or reply to the original motion" but instead "shall be filed as a separate document").

Even if the issue were properly before the Court, however, the Court would defer reaching a conclusion as to whether the Trustee is entitled to a trial by jury on any of the claims asserted in this litigation. The parties agree that the issue of the Trustee's right to a jury trial in this case involves complicated issues of first impression in this Circuit. [*See* #74 at 6 (citing only out-of-Circuit cases for the proposition that "numerous courts find that a trustee (or debtor) lacks jury trial rights for claims that it prosecutes"); #75 at 3 (acknowledging that "there is a split of authority" and no "controlling Tenth Circuit case law . . . or even any persuasive law from any courts within the Tenth Circuit" regarding whether a trustee is barred from asserting a right to trial by jury)] Defendants' alternative argument that contractual jury-trial waivers bind the Trustee [#74 at 9-14] potentially requires a fact-intensive inquiry for which there currently is an insufficient record. *See Moreno v. Qwest Corp.*, No. 13-CV-00103-RM-MEH, 2013 WL 2444720, at *2 (D. Colo. June 5, 2013) (finding that courts "consider[ ] a number of factors when determining whether an . . . entity has entered into a contractual jury trial waiver

8

knowingly and voluntarily . . . includ[ing]: (1) the conspicuousness of the provision in the contract; (2) the level of sophistication and experience of the parties entering into the contract; (3) the opportunity to negotiate terms of the contract; (4) the relative bargaining power of each party; and (5) whether the waiving party was represented by counsel").

As Defendants point out, pre-trial proceedings before the Bankruptcy Court, including the consideration of dispositive motions, may obviate the need to resolve these complex jury trial issues for at least some of the claims. [*See* #74 at 4] The Court thus finds that efficiency and judicial economy are better served by deferring any decision on the Trustee's right to a trial by jury until after all pre-trial proceedings are complete.[8] *See, e.g.*, *Centrix Fin. Liquidating Trust v. Nat'l Union Fire Ins. Co.* (*In re Centrix Fin., LLC*), No. 09-CV-01542-PAB-CBS, 2011 WL 63505, at *3 (D. Colo. Jan. 7, 2011) ("deem[ing] it premature to resolve the waiver [of jury trial] question[ ] [because] [t]he case may never require a trial"); *Redmond v. Hassan*, No. 07-204-KHV, 2007 WL 677611, at *1 (D. Kan. Feb. 28, 2007) ("The Court need not conclusively distinguish legal from equitable claims at this point, however, because even where the right to a jury trial constitutes cause for withdrawal, the Court may decline to withdraw the reference until the case is ready for trial." (internal quotation omitted)); *Rebein v. Kost*,

---

[8] The Trustee states, without explanation, that "it will be beneficial for the parties to know from the outset whether this matter will ultimately be tried before a jury or as a bench trial as that may impact a variety of considerations, including discovery, litigation strategy, and the potential for settlement." [#75 at 2-3] Defendants clearly do not agree with the Trustee as they have asked the Court to defer ruling on the Trustee's right to a jury trial. [#74 at 4-5] The Court finds that any benefit to the parties that may derive from a decision on the right to a jury trial at this time, is outweighed by the potentially unnecessary burden on the Court and the delay it would cause in not having this case referred to the Bankruptcy Court for pre-trial proceedings, particularly given that Capital One and Medley's proofs of claim already are before the Bankruptcy Court.

9

No. 06-204-CM, 2006 WL 3842124, at *3 (D. Kan. Nov. 3, 2006) ("The court will determine which legal claims will be tried to a jury at a later time and defers withdrawing the proceeding until the matter is ready for trial."); *In re Hardesty*, 190 B.R. 653, 655 (D. Kan. 1995) (stating that "court will reserve its determination of a right to a jury trial on the plaintiff's preference action" and denying request for withdrawal of reference).

For purposes of this Order only, the Court will assume, without deciding, that at least some of the Trustee's claims are triable of right by a jury.[9]

### B. Withdrawal of the Automatic Reference

The Trustee's right to a trial by jury on certain of its claims, however, is not dispositive of the issue of whether the Court should withdraw the reference to the Bankruptcy Court. The district court "may withdraw" the reference of a case to the Bankruptcy Court, in whole or in part, "for cause shown."[10] 28 U.S.C. § 157(d). "While a party's right to a jury trial on some or all claims raised in an adversary proceeding may constitute cause for withdrawal of the reference to bankruptcy court, it is within the district court's discretion to determine at what stage in the proceedings the reference should be withdrawn." *Smiley v. Talley (In re Am. Title Servs. Co.)*, No. 15-CV-00950-PAB, 2015 WL 13229210, at *2 (D. Colo. Dec. 11, 2015). "Courts in this district have repeatedly held that where the bankruptcy court possesses more familiarity with the

---

[9] Furthermore, "[t]he Court declines the opportunity to resolve the issue" of the Trustee's right to a jury trial at this time, because, for the reasons explained below, "it [would] not change the outcome" of the Court's decision that the automatic reference to the Bankruptcy Court should not be withdrawn. *In re Centrix Fin., LLC*, 2011 WL 63505, at *5.

[10] 28 U.S.C. § 157(d) further provides that "[t]he district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." Neither party argues that this provision requiring mandatory withdrawal of the reference is applicable here.

facts of a case incident to its management of the bankruptcy proceedings, withdrawal of the reference to bankruptcy court should be delayed until the case is ready for trial." *Id.* (collecting cases).

Here, the Bankruptcy Court clearly has more familiarity with the parties and facts of this case incident to its management of the bankruptcy proceedings. The Craig Energy Bankruptcy and the Energy Holdings Bankruptcy have been pending before the Bankruptcy Court for over two and a half years. In addition to the bankruptcy proceedings, the Craig Energy Bankruptcy docket identifies over 50 adversary actions associated with the Craig Energy Bankruptcy that have been handled by the Bankruptcy Court.

The Trustee argues that "in the interest of judicial economy and efficiency, as well as that of the respective parties, pre-trial maters should remain before this Court even were the Court to otherwise conclude that it may transfer pre-trial proceedings to the Bankruptcy Court." [#71 at ¶ 14] The Trustee, however, provides no explanation or authority for this contention. The Trustee thus has not shown "how he would be prejudiced by having the [B]ankruptcy [C]ourt handle the pretrial matters and by having the case withdrawn only when it is ready for trial." *In re Hardesty*, 190 B.R. at 657. Nor has the Trustee attempted to distinguish any of the numerous cases from this District that have taken the opposite view—*i.e.*, that judicial economy and efficiency are served by delaying the withdrawal of the reference until the case is ready for trial. *Smiley*, 2015 WL 13229210, at *2 (collecting cases). The Court finds that "[a]ny judicial economy effectuated by withdrawing the reference at this time would be minimal, and would disturb Congress' intent to leave questions involving the bankruptcy court's expertise

11

within its jurisdiction to the greatest extent possible." *Riederer v. Kutak Rock, L.L.P.*, No. 11-CV-2456-JTM, 2011 WL 4597469, at *1 (D. Kan. Oct. 3, 2011) (internal quotation omitted).

The Court thus "concludes that the best course is to delay withdrawal of the reference so that the Court may continue to benefit from the [B]ankruptcy [C]ourt's expertise and familiarity with the case." *Wagner v. Dreskin* (*In re Vaughan Co.*), No. 13-631 JCH/KK, 2015 WL 13666987, at *7 (D.N.M. Jan. 28, 2015). "This approach streamlines pretrial procedure and serves the interests of judicial efficiency by taking advantage of the Bankruptcy Court's expertise and familiarity of the issues and discouraging forum shopping." *Riederer*, 2011 WL 4597469, at *1 (internal quotation omitted). While the Court declines to withdraw the reference at this time, the Court notes that it may be appropriate to do so at some point in the future.

## III. CONCLUSION

For the foregoing reasons, the Trustee's request to withdraw the automatic reference of this case to the Bankruptcy Court is **DENIED WITHOUT PREJUDICE** and the Order to Show Cause is **MADE ABSOLUTE**. The Clerk of Court is directed to transfer this case (and all pleadings and documents filed therein) to the United States Bankruptcy Court for the District of Colorado pursuant to D.C.COLO.LCivR 84.1(f). This Order is made without prejudice to the Trustee filing a motion to withdraw the reference upon completion of pre-trial matters in the Bankruptcy Court if issues remain as to which the Trustee asserts a right to trial by jury.

DATED: October 12, 2018            BY THE COURT:

                                                        s/Scott T. Varholak
                                                    United States Magistrate Judge